T.C. Memo. 1997-180


UNITED STATES TAX COURT


JAMES C. ESTRADA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6241-95.                    Filed April 15, 1997.


    P created two "trusts".  P and O then formed a
partnership (NAA) to perform nurse anesthetic services,
listing O and one of the "trusts", T, as partners.  P
and O were the only people who performed services on
behalf of NAA.
    <u>Held</u>:  P is taxed on any income transferred to the
"trust".
    <u>Held</u>, <u>further</u>, P is liable for additions to tax
under sec. 6651(a), I.R.C.
    <u>Held</u>, <u>further</u>, P is liable for additions to tax
under sec. 6654(a), I.R.C.


<u>Jeffrey A. Dickstein</u>, for petitioner.

<u>Andrew H. Lee</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  James C. Estrada petitioned this Court to redetermine respondent's determination of the following Federal income tax deficiencies and additions thereto:[1]

|  |  | Additions to Tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1991 | $8,191 | $2,048 | $470 |
| 1992 | 7,513 | 1,878 | 327 |

We must decide:

1.   Whether petitioner failed to report income for 1991 and 1992.  We hold that he did;

2.   whether petitioner is liable for the section 6651(a)(1) addition to tax for 1991 and 1992.  We hold that he is;

3.   whether petitioner is liable for the section 6654(a) addition to tax for 1991 and 1992.  We hold that he is.

Unless otherwise indicated, section references are to the Internal Revenue Code applicable to the years in issue.  Rule

---

[1] In her second amendment to answer, respondent increased petitioner's deficiencies and additions to tax as follows:

|  |  | Additions to Tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
| 1991 | $35,773 | $8,943 | $2,059 |
| 1992 | 28,405 | 7,101 | 1,239 |

references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Alta Loma, California, when he petitioned the Court.

Petitioner is a nurse anesthetist. Petitioner rendered nurse anesthetist services on behalf of a partnership called Newport Anesthesia Associates (NAA) for approximately 30 to 40 hours a week for 10 to 15 months during the years in issue. Since 1987, NAA has operated as a partnership, using petitioner's address as its address. The partnership agreement was entered into between Renato Oania (Oania) and James C. Estrada CRNA Trust (CRNA Trust) and was signed by Oania and petitioner; petitioner signed the partnership agreement on behalf of the CRNA Trust. Petitioner and Oania are the only people who have worked for and administered anesthesia for NAA.

Dr. Peter J. Voloshin (Dr. Voloshin) has worked as a plastic surgeon since 1986. During 1991 and 1992, Dr. Voloshin operated a business entitled Newport Institute of Surgery, P. James Voloshin, M.D., Inc. (NIS). Dr. Voloshin's business maintained operating room facilities and required the services of a nurse anesthetist.

NAA provided anesthesia services to NIS for which it received payments during 1991 and 1992, some of which were handed directly to petitioner. A portion of the payments included compensation for anesthetic services rendered by petitioner; NIS' books indicated "Jim patient payments" for payments made by patients to petitioner. NAA also received payments for anesthesia services from insurance companies. In 1991 and 1992, respectively, NAA received total income of $255,769 and $212,940 from insurance companies and NIS and had $39,334 and $39,952 in total deductions.

Petitioner had control over funds received by NAA and deposited into NAA's account in Security Pacific Bank before the funds were transferred to the CRNA Trust. NAA has disbursed funds from its checking account, payable directly to the CRNA Trust. Petitioner has deposited checks issued by NIS into NAA's bank account and has signed checks on NAA's account; Security Pacific Bank honors only checks bearing an authorized signature. When Oania withdrew funds from the NAA bank account, he divided each amount 50/50 with petitioner.

Petitioner also had control of funds deposited into the CRNA Trust bank account at Security Pacific Bank. Petitioner was authorized to sign checks drawn on the account.

Petitioner, as grantor, formed the James C. Estrada Family Trust (Family Trust) on June 10, 1978. The Family Trust Agreement provided that petitioner's address was the trust

address. There is no evidence to indicate whether the CRNA Trust and the Family Trust are one in the same.

NAA filed 1991 and 1992 Federal tax returns, signed by petitioner as general partner. On the Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., attached to NAA's 1991 and 1992 returns, NAA reported the 1991 and 1992 income of both the CRNA Trust and Oania as $80,505 and $72,130, respectively. In the notice of deficiency, respondent determined that petitioner failed to report income of $23,133 and $21,750 for 1991 and 1992, respectively. In respondent's second amendment to answer filed on January 6, 1997, respondent increased petitioner's 1991 and 1992 income tax by "50 percent of $55,425" and "50 percent of $28,728", respectively. There is no evidence to indicate that either the CRNA Trust or the Family Trust ever filed returns or paid taxes for the years in issue.

OPINION

1. Unreported Income

Respondent determined that petitioner earned compensation from his nurse anesthetic services that he failed to include in gross income. Petitioner argues that the CRNA Trust earned the disputed income, rather than he. We agree with respondent that the compensation is taxable to petitioner.

Petitioner must prove that respondent's determinations set forth in her notice of deficiency are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Potts, Davis & Co.

v. Commissioner, 431 F.2d 1222 (9th Cir. 1970), affg. T.C. Memo. 1968-257.  Respondent must prove any increase in those deficiencies asserted in her amended answer.  Rule 142(a); see also Robinson v. Commissioner, 102 T.C. 116, 124 (1994), affd. in part and revd. on another issue 70 F.3d 34 (5th Cir. 1995); Estate of Bowers v. Commissioner, 94 T.C. 582, 595 (1990).

Section 61(a) defines gross income as "all income from whatever source derived."  Sec. 61(a)(1).  This definition includes all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion."  Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); Hawkins v. United States, 30 F.3d 1077, 1079 (9th Cir. 1994).

Although a taxpayer has the legal right to minimize his taxes through legally permissible means, see Gregory v. Helvering, 293 U.S. 465, 469 (1935), this right does not permit the taxpayer to structure a paper entity to avoid tax when that entity lacks economic reality.  See Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980).  When the form of the transaction has not altered any cognizable economic relationships, we look through that form and apply the tax law according to the substance of the transaction.  Furman v. Commissioner, 45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967).

Our review of the record shows that petitioner is liable for deficiencies for the subject years equal to the amounts asserted by respondent in here second amendment to answer.  The record

shows that petitioner administered the anesthesia and received the compensation for his services.  We find that the trust was not a separate taxpaying entity for three primary reasons: (1) Petitioner, not the trust, controlled the earning of the compensation at issue, (2) petitioner controlled the CRNA Trust bank account, and (3) petitioner treated 50 percent of the money paid to NAA as his own.

First, we find that petitioner clearly controlled the compensation in question.  Dr. Voloshin and Oania testified that petitioner and Oania performed anesthetic services for which they were compensated.  Oania and petitioner were the only people who performed services for NAA.

In addition, petitioner clearly had control over the CRNA Trust bank account and partial control over the NAA bank account. A person may be treated as the owner of an account if he or she can derive readily realizable economic value from the account, and a person derives such value when "he or she has the freedom to dispose of the account funds at will."  Chu v. Commissioner, T.C. Memo. 1996-549.  Oania, petitioner's partner, testified that he and petitioner split the profits of NAA equally, and that petitioner sometimes deposited checks issued by NIS into the NAA bank account.  Canceled checks from the NAA bank account show petitioner as the signatory.  Petitioner was also authorized to sign checks drawn on the CRNA Trust bank account.

Petitioner's attorney ineffectively attempted to elicit testimony that compensation for petitioner's services was paid to the CRNA Trust. During direct examination, Oania testified that he does business on a day-to-day basis with petitioner, and that he divides the compensation from the anesthetic services with petitioner. Then, during redirect examination petitioner's attorney attempted to change Oania's testimony.

Q    You were asked if you divide the money from Newport
     Anesthesia Associates 50/50 with James Estrada?

A    Yes, I divide ---

Q    You answered yes?

A     --- we divide that, yes, sir.

Q    What you mean is you divide it with the James C.
     Estrada CRNA Trust, don't you?

A    That's correct.

Q    Your partner?

A    Yeah, um-hmm.

Q    And in fact, that's what the tax returns show, is
     it not?

A    Yes.

Q    The various K-1s that are attached to those two
     returns?

A    That's correct, sir.

Q    And you didn't mean to infer that actually Mr.
     Estrada got the money, did you?

A    I didn't mean that.

Immediately following petitioner's counsel's examination of the witness, however, Oania confirmed during re-cross-examination that he actually works with and shares compensation with petitioner.

Q    Mr. Oania, when you divide up the funds, the person
     that you sit down with, or stand up with when you
     divide up the funds is James C. Estrada?

A    The person, yes.

On the basis of the record, we find that petitioner performed services for NAA, and was compensated for performing them. Since petitioner treated the money "paid" to the CRNA Trust as his own, the total amount "paid" to the CRNA Trust during the years in issue was includable in petitioner's gross income.

## 2.  Addition to Tax Under Section 6651(a)(1)

Respondent determined additions to tax under section 6651(a) for petitioner's 1991 and 1992 taxable years. In order to avoid this addition to tax, petitioner must prove that his failure to file was:  (1) Due to reasonable cause and (2) not due to willful neglect. Sec. 6651(a); Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985); United States v. Nordbrock, 38 F.3d 440 (9th Cir. 1994). A failure to file a timely Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence and, nevertheless, was unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect means a

conscious, intentional failure to file or reckless indifference. <u>United States v. Boyle</u>, <u>supra</u> at 245.

Petitioner has offered no evidence to show that his failure to file was due to reasonable cause and not willful neglect. Accordingly, we sustain respondent's determination under section 6651(a)(1) for petitioner's 1990 and 1991 taxable years.

## 3.  Addition to Tax Under Section 6654(a)

Respondent further determined an addition to tax under section 6654(a) for each of the years in issue, asserting that petitioner failed to pay estimated tax.  This addition to tax is mandatory unless petitioner proves that he met one of the exceptions contained in section 6654.  <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 913 (1988).  Petitioner has offered no evidence to show that any of the statutory exceptions apply.  Accordingly, we sustain respondent's determination under section 6654(a) for petitioner's 1990 and 1991 taxable years.

We have considered all arguments made by petitioner for contrary holdings and, to the extent not discussed above, find them to be without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.